IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

RODNEY HILLIARD,

               Plaintiff,             Case No.

v.                                    Judge
                                    Magistrate Judge
DFA DAIRY BRANDS FLUID, LLC,        JURY DEMAND

               Defendant.
_____/

## COMPLAINT

      Plaintiff, Rodney Hilliard ("Hilliard"), was terminated after he requested to take FMLA/FFCRA leave and shortly after he had reported race discrimination and harassment in the workplace. Rather than returning him to his previous position after he took leave to care for himself and his family members' severe COVID symptoms, he was called into the office and told he would be disciplined and moved to a less-desirable shift. When he protested that he followed all the company's policies for communicating during his leave, he was presented with resignation papers. When Mr. Hilliard questioned the reason he was being forced to resign, he was summarily terminated. Accordingly, Mr. Hilliard files the instant Complaint for violations of the Family and Medical Leave Act ("FMLA"), the Families First Coronavirus Response Act ("FFCRA"), Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 1981, the Americans with Disabilities Act as Amended ("ADAAA"), the Tennessee Human Rights Act ("THRA"), and the Tennessee Disabilities Act ("TDA").

## PARTIES

1

1.     Plaintiff, Mr. Rodney Hilliard, is a citizen and resident of Madison, Davidson County, Tennessee and a former employee of Defendant. Plaintiff worked for Defendant in Nashville, Davidson County, Tennessee.

2.     Defendant DFA Dairy Brands Fluid LLC ("DFA") is a Delaware Limited Liability Company licensed to transact business in Tennessee. Its registered agent for service of process is Corporation Service Company, 2908 Poston Avenue, Nashville, TN 37203.

3.     At all material times, Defendant DFA has been an employer as defined by the ADAAA, FMLA, FCRA, Title VII and under state law.

4.     At all times material to this action, based on information and belief, Defendant employed 50 or more employees for each working day during each of 20 or more calendar workweeks in 2019 and/or 2020 and is an "employer" as defined by the FMLA, 29 U.S.C. § 2611(4)(A).

5.     At all times material to this action, Plaintiff Hilliard was an "eligible employee" under the FMLA pursuant to 29 U.S.C. § 2611(2) and 29 C.F.R. § 825.110.

6.     At all material times, Defendant has been an employer as defined by the ADA, 42 U.S.C. § 12111.

7.     Plaintiff is a qualified individual with a disability under 29 C.F.R. §1630.2(g) and (h)(1).

8.     At all material times, Defendant has been an employer as defined by the Tennessee Disability Act, T.C.A. § 8-50-103 ("TDA").

## JURISDICTION AND VENUE

9.     This is an action for unlawful employment practices brought under the Family and Medical Leave Act of 1993, 29 U.S.C. § 2601 et seq. ("FMLA") (Count I) the Families First

2

Coronavirus Response Act (Count II); the Americans with Disabilities Act 42 U.S.C. §§ 12101 *et. seq.,* as amended by the ADA Amendments Act of 2008 ("ADAAA") (Count III); Tennessee Disability Act, T.C.A. § 8-50-103 *et seq.* (Count IV), Tennessee Human Rights Act ("THRA"), T.C.A. § 4-21-101 *et seq.* (Count V), Title VII of the Civil Rights Act of 1964 ("Title VI") and 42 U.S.C. § 1981 (Count VII).

10.     The Court has jurisdiction under 28 U.S.C. §§ 1331, 1343(a)(4), and 1367(a). Venue is proper under 28 U.S.C. § 1391.

11.     Plaintiff complied with all conditions precedent to the filing of his claims pursuant to 42 U.S.C. § 12101 *et. seq*, to wit: a charge of discrimination alleging race discrimination, disability discrimination, and retaliation, was filed with the Equal Employment Opportunity Commission ("EEOC") within 300 days of the unlawful employment practice. The EEOC issued Plaintiff a Notice of Right to Sue and this action was commenced within 90 days of receipt of the EEOC's Notice of Right to Sue.

**FACTS**

12.     Plaintiff, Rodney Hilliard, an African American male, worked as a pasteurizer at Defendant Country Delite Farms/DFA since 2016. He was employed continuously until his termination on February 1, 2021.

13.     DFA is a farmer-owned national milk marketing cooperative and dairy food processor headquartered in Kansas City, Kansas.  DFA owns and operates the facility formerly known as "Country Delite Farms" in Nashville, Tennessee and employs over 50 employees at this facility.

14.     Mr. Hilliard was one of three pasteurizers at the facility. There was one pasteurizer for each of the three shifts. Mr. Hilliard worked the 3rd shift and had done so for the entirety of his

3

employment at Country Delite Farms/DFA. His shift was from 11 p.m. to 7 a.m. the following day, although he often had to stay over in order to handle matters for the shift change. He worked 5-6 days per week. His regular weekly schedule began at 11 p.m. on Sunday evening.

15. Because there were only 3 employees trained to be pasteurizers, when one of the employees was out due to vacation or illness, the other 2 employees covered all 3 shifts. It was not unusual for Mr. Hilliard to cover the shifts of the other pasteurizers for over a week at a time. It took four months to train a new employee on the pasteurizing process. Therefore, the pasteurizers just covered each other's shifts when necessary. The facility could not run without a pasteurizer.

16. The employees at DFA were predominantly white, especially in management. The first/second shift supervisor, Mike Buel, a white man, harassed Mr. Hilliard continuously when he saw him during the shift changeover. He made derogatory comments to Mr. Hilliard and refused to call him by his name, instead calling him "Bubba". Mr. Hilliard repeatedly asked him not to "call him out of his name" and instead call him either Rodney or Hilliard. Mr. Buel persisted in calling him "Bubba," which Mr. Hilliard found derisive and offensive.

17. In late 2020/early 2021, Mr. Hilliard reported to Human Resources Manager Lisa Beane that he was being harassed by Mr. Buel and asked for the harassment to cease.

18. On information and belief, other African American employees had been harassed by Mr. Buel and had also reported the harassment to Human Resources. No discernible action was taken to prevent harassment from occurring.

19. In January 2021, Mr. Hilliard began experiencing symptoms of COVID-19. Several other employees in the facility, all who work in close proximity, had tested positive for COVID-19.

20.     Mr. Hilliard tested positive for COVID-19. He informed his supervisor, Production Manager Nathan Ladd, that he was COVID-19 positive and was advised by his health provider to quarantine for 14 days. He gave his supervisor his return-to-work date 14 days in the future.

21.     While he was out on COVID quarantine, his immediate family members also tested positive for COVID-19 and began experiencing severe symptoms of the virus. He informed Mr. Ladd that his wife was bedridden with the virus and that he had to care for their young son, who also contracted the virus from Mr. Hilliard. Mr. Hilliard communicated to Mr. Ladd that he and his family were to get retested on January 28, 2021, to see if they were still or no longer testing positive for COVID-19. He requested to take PTO leave if necessary in order to stay home and care for his family and himself and return to work on the 31st of January (the first day of Mr. Hilliard's regularly scheduled work week). Mr. Ladd indicated that there was no issue with that and that he would see Mr. Hilliard back at work on Sunday, January 31, 2021.

22.     Mr. Hilliard became aware that DFA was requesting that COVID-positive employees return to work prior to the end of their 14-day quarantine period. And, prior to the end of his 14 day quarantine, Lisa Beane called Mr. Hilliard and requested that he return to work prior to the date his quarantine period was complete. Mr. Hilliard informed her that he and his family were still experiencing severe symptoms and that his health care provider had advised that he needed to obtain a negative COVID-19 test before being released to return to work. They discussed that he would return to work on Sunday night, which would start his regular week. Ms. Beane further stated that Mr. Hilliard needed to get a doctor's excuse for taking PTO leave. Mr. Hilliard informed Ms. Beane that he had already been approved for 2 PTO days by Mr. Ladd and would return to work on Sunday night.

23.     Mr. Hilliard requested FMLA paperwork during the call. He never received any paperwork from DFA. DFA had a "Temporary Coronavirus (COVID-19) Paid Leave Policy" which provided "up to 14 calendar days of COVID-19 paid leave available to employees unable to perform their assigned duties." Ms. Beane did not discuss the paid leave policy with Mr. Hilliard during the phone call or at any time. Ms. Beane did not tell him that he would receive discipline if he did not return before his scheduled Sunday shift.

24.     Mr. Hilliard had tested negative for COVID-19 and was preparing to return to work for his shift when he received a phone call from Ms. Beane telling him not to report on Sunday night, but instead to come to a meeting on Monday morning.

25.     Mr. Hilliard attended the meeting on Monday, February 1, 2021. Present were Mr. Hilliard, Ms. Beane, Mr. Ladd and the Plant Manager Aubrey Leake. At the meeting, Ms. Beane informed Mr. Hilliard that he would receive 9 points under their attendance policy for an alleged "no call/no show" during his COVID leave.

26.     Mr. Hilliard informed Ms. Beane and the plant manager that he was not a no call/no show as he had informed his supervisor, Mr. Ladd, and Ms. Beane of his COVID-19 status and was on approved leave. Further, he reminded them that he had never called out of work before.

27.     The Plant Manager became angry and said that he didn't trust Mr. Hilliard and that if he allowed him to come back to work, it would only be on 2nd shift, and not on his regular 3rd shift. The second shift was frequently supervised by Mr. Buel, whom Mr. Hilliard had very recently reported for racial harassment. Mr. Hilliard protested that he could not work 2nd shift due to his children's school schedule but would try to work it out. He also stated that he thought this action was retaliatory and said he'd like to speak with an attorney.

6

28.     At this point, the Plant Manager told him that he was "done with him," and presented him with papers indicating that he agreed to resign. Mr. Hilliard refused to sign the resignation documents at the meeting. He was escorted off the premises.

29.     Mr. Hilliard called the Corporate HR department in Knoxville, TN and complained that he was treated unfairly and retaliated against and that he had requested FMLA leave and never received the paperwork.

30.     The corporate HR representative stated that he thought the Plant Manager handled it wrong, but that the Plant Manager was not going to reinstate Mr. Hilliard. Instead, they paid him through the month of February, after being escorted off the premise on the 1st of February.  Mr. Hilliard never signed any waiver or release of claims. Instead, he was mailed 2 different separation letters, on 2 different dates, stating 2 different reasons; one stated that he quit and one stated that he was discharged. Neither separation letter was signed by Mr. Hilliard; both were signed by Ms. Beane and mailed to the unemployment office which delayed Mr. Hilliard from receiving his benefits for 9 months.

31.     At the time of his termination, Mr. Hilliard had 15 days of PTO accrued and unused.

**Count I**
**Violation of FMLA**
**(Interference and Retaliation)**

32.     Plaintiff restates and incorporates herein the foregoing paragraphs.

33.     Defendant retaliated against Plaintiff for requesting to take FMLA-protected leave and for taking leave.

34.     Defendant interfered with Plaintiff's FMLA rights.

35.     At all times material to this action, Plaintiff was an eligible employee under the FMLA, 29 U.S.C. § 2611(2)(a)(i)(ii).

36.     Defendant is an eligible employer under the FMLA, 29 U.S.C. § 2611(4)(A)(i).

37.     Plaintiff was entitled to receive FMLA leave to care for his own serious health condition and for the serious health conditions of his immediate family members including his spouse.

38.     Defendant subjected Plaintiff to disparate terms and conditions of employment after he requested and took FMLA, including but not limited to requesting for him to return to work prior to the end of his quarantine period, issuing discipline to him for an alleged no call/no show when he had kept in communication with both his supervisor and human resources, and in failing to return him to substantially similar position and retaliating against him after he requested and took FMLA leave by terminating him for a pretextual reason.

39.     Defendant's actions constitute interference and/or retaliation violations of the FMLA.

40.     Defendant's conduct was a motivating factor in adverse employment actions against Plaintiff.

41.     Defendant's conduct harmed and caused damage to Plaintiff.

42.     As a result, Plaintiff is entitled to recover damages, including lost wages and benefits, liquidated damages, attorneys' fees, costs, interest, reinstatement, front pay and benefits, and any other legal and equitable relief to which he may be entitled.

**Families First Coronavirus Response Act (FFCRA)**

43.     Plaintiff restates and incorporates herein the foregoing paragraphs.

44.     At all times material to this action, Plaintiff was an eligible employee under the FMLA, 29 U.S.C. § 2611(2)(a)(i)(ii).

45. Defendant DFA is an eligible employer under the FMLA, 29 U.S.C. § 2611(4)(A)(i).

46. Defendant instituted a Temporary Coronavirus (COVID-19) Paid Leave Policy effective March 8, 2020. Pursuant to its policy, an employee diagnoses with COVID-19 and/or with a family member living in their household diagnosed with COVID-19 is eligible to receive up to 14 days of paid leave.

47. Under the FFCRA, an employee qualifies for paid sick time if the employee is unable to work or telework due to a need for leave because the employee is caring for a child whose school or place of care is closed or if childcare provider is unavailable for reasons related to COVID-19.

48. Defendant interfered with Plaintiff's FFRCA rights by not allowing him paid sick without discipline or retaliation to care for his family.

49. Defendant retaliated against Plaintiff by disciplining him, failing to return him to substantially similar employment, and terminating him.

50. Defendant's actions constitute interference and/or retaliation violations of the FMLA and FFCRA.

51. Defendant's conduct was a motivating factor in adverse employment actions against Plaintiff.

52. Defendant's conduct harmed and caused damage to Plaintiff.

53. As a result, Plaintiff is entitled to recover damages, including lost wages and benefits, liquidated damages, attorneys' fees, costs, interest, reinstatement, front pay and benefits, and any other legal and equitable relief to which he may be entitled.

**Count II**
**Violation of ADA/ADAAA- Disability Discrimination/Retaliation**

54.     Plaintiff restates and incorporates herein the above paragraphs in their entirety.

55.     Pursuant to the ADAAA, an individual is considered to have a disability if he has a physical impairment that substantially limits one or more major life activities, has a record of such an impairment, or is regarded as having such impairment.

56.     Plaintiff was a qualified individual with a disability, had a record of such impairment, and/or was regarded as disabled by Defendant.

57.     Defendant discriminated and retaliated against Plaintiff as a result of his requests for accommodation of additional time off and in violation of the ADAAA that culminated in his discharge.

58.     Defendant retaliated against Plaintiff after he engaged in protected conduct when he requested an accommodation of time off. Defendant terminated Plaintiff after he requested accommodation and attempted to return to work. Defendant's retaliation included disciplining him for his absence, attempt to transfer him to a less-desirable shift which was frequently supervised by a person he reported for harassment, and termination.

59.     As a direct and proximate result of Defendant's unlawful acts, Plaintiff suffered and continues to suffer emotional pain, suffering, professional and personal embarrassment, humiliation, loss of enjoyment of life, inconvenience and lost earnings and benefits.

60.     As a result, Plaintiff is entitled to recover damages, including lost wages and benefits, compensatory and punitive damages, attorneys' fees, costs, interest, reinstatement, front pay and benefits, and any other legal and equitable relief to which he may be entitled.

**Count III**
**Violation of TDA- Disability Discrimination/Retaliation**

61.     Plaintiff restates and incorporates herein the foregoing paragraphs.

10

62.     Plaintiff was a qualified individual with a disability and/or was regarded as disabled.

63.     Plaintiff was discriminated against on the basis of his disability and/or regarded as disabled.

64.     Plaintiff was subjected to an adverse employment action because of his disability and/or regarded as disabled.

65.     When Defendant protested that he was being treated differently due to his disability or regarded as disabled, he was retaliated against. Defendant's retaliation included disciplining him for his absence, attempt to transfer him to a less-desirable shift which was supervised by a person he reported for harassment, and termination.

66.     As a direct and proximate result of Defendant's unlawful acts, Plaintiff suffered and continues to suffer emotional pain, suffering, professional and personal embarrassment, humiliation, loss of enjoyment of life, inconvenience and lost earnings and benefits.

67.     As a result, Plaintiff is entitled to recover damages, including lost wages and benefits, compensatory damages, attorneys' fees, costs, interest, reinstatement, front pay and benefits, and any other legal and equitable relief to which he may be entitled.

## COUNT V
### Tennessee Human Rights Act - Race Discrimination/Harassment/Retaliation

68.     Plaintiff restates and incorporates herein the allegations in the above paragraphs.

69.     Plaintiff was subjected to a continuing and on-going campaign of race harassment and discrimination in Defendant's workplace because of his race, African American.

70.     Plaintiff reported and/or protested incidents of harassment by a manager to Human Resources. Defendant failed to remedy and/or prevent race harassment in the workplace.

11

71.     Defendant is vicariously liable for the harassment perpetrated by management and is liable for failing to remedy harassment in the workplace.

72.     Defendant failed to take prompt remedial action to prevent harassment in the workplace.

73.     In close proximity to Plaintiff's Complaint about harassment by a supervisor, he was retaliated against and told he would report to that supervisor's shift. When Plaintiff protested, he was terminated.

74.     Plaintiff engaged in protected activity under the Act by objecting to and protesting race harassment and discrimination in the workplace. Such actions by the Plaintiff are statutorily protected activities under the Tennessee Human Rights Act.

75.     Defendant retaliated against Plaintiff because of his protected activity by taking adverse action against Plaintiff. As a result of Plaintiff's complaints and protests of race harassment and discrimination in the workplace, Defendant terminated his employment for a pretextual reason.

76.     As a direct and proximate result of Defendant's unlawful acts, Plaintiff suffered and continues to suffer emotional injury, suffering, professional and personal embarrassment, humiliation, loss of enjoyment of life, inconvenience, lost earnings, attorney's fees, costs, interest and any other legal and equitable relief to which he may be entitled.

## <u>COUNT VI</u>
### Title VII - Race Discrimination/Harassment/Retaliation

77.     Plaintiff restates and incorporates herein the allegations in the above paragraphs.

78.    Plaintiff was subjected to a continuing and on-going campaign of race harassment and discrimination in Defendant's workplace because of his race, African American.

79.    Plaintiff reported and/or protested incidents of harassment by a manager to Human Resources. Defendant failed to remedy and/or prevent race harassment in the workplace.

80.    Defendant is vicariously liable for the harassment perpetrated by management and is liable for failing to remedy harassment in the workplace.

81.    Defendant failed to take prompt remedial action to prevent harassment in the workplace.

82.    In close proximity to Plaintiff's Complaint about harassment by a supervisor, he was retaliated against and told he would report to that supervisor's shift. When Defendant protested, he was terminated.

83.    Plaintiff engaged in protected activity under the Act by objecting to and protesting race harassment and discrimination in the workplace. Such actions by the Plaintiff are statutorily protected activities under Title VII of the Civil Rights Act of 1964.

84.    Defendant retaliated against Plaintiff because of his protected activity by taking adverse action against Plaintiff. As a result of Plaintiff's complaints and protests of race harassment and discrimination in the workplace, Defendant terminated his employment for a pretextual reason.

85.    As a direct and proximate result of Defendant's unlawful acts, Plaintiff suffered and continues to suffer emotional injury, suffering, professional and personal embarrassment, humiliation, loss of enjoyment of life, inconvenience, lost earnings, attorney's fees, costs, interest and any other legal and equitable relief to which he may be entitled.

**COUNT VII**
**42 U.S.C. § 1981**

13

**Discrimination, Hostile Work Environment and Retaliation under**

86.  Plaintiff restates and incorporates herein the allegations in the above paragraphs.

87.  Plaintiff was subjected to discrimination and a hostile work environment in Defendant's workplace because of his race, African American.

88.  It is the public policy and law of the United States that employees must be able to exercise their rights under state and federal discrimination law without fear of reprisal or penalty from an employer.

89.  Plaintiff objected to and protested race harassment/discrimination in the workplace. Such actions by the Plaintiff are statutorily protected activities under 42 U.S.C. § 1981.

90.  In violation of 42 U.S.C. § 1981, Defendant terminated Plaintiff's employment in retaliation for exercising his rights 42 U.S.C. § 1981.

91.  Defendant retaliated against Plaintiff because of his protected activity by taking adverse action against Plaintiff. As a result of Plaintiff's complaints and protests of race discrimination in the workplace, Defendant terminated his employment for a pretextual reason.

92.  Further, Defendant retaliated against Plaintiff by filing false information with the EEOC accusing Plaintiff of engaging in violent behavior and making threats to Defendant's employees, thereby perpetuating the stereotype of the angry black man.

93.  As a direct and proximate result of Defendant's unlawful acts, Plaintiff suffered and continues to suffer emotional pain, suffering, professional and personal embarrassment, humiliation, loss of enjoyment of life, inconvenience and lost earnings and benefits.

**RELIEF REQUESTED**

14

Plaintiff respectfully requests:

1.        A jury trial;

2.        Back pay and damages for lost benefits;

3.        Reinstatement or front pay;

4.        Damages for emotional pain, embarrassment, humiliation, stress, anxiety, inconvenience, and loss of enjoyment of life;

5.        Punitive damages, where appropriate;

6.        Liquidated damages under the FMLA and FFCRA;

7.        Attorneys' fees and expenses;

8.        Prejudgment interest and, if applicable, post-judgment interest; and

9.        Such other and further legal or equitable relief to which he may be entitled under the FMLA/FFCRA, ADAAA, THRA, TDA, Title VII and Section 1981, including a declaration that Defendant violated his civil rights and training for Defendant's managers so that they will not continue to discriminate against other employees because of their association with an individual with a disability.

Respectfully submitted,

*/s Anne Bennett Hunter*
Heather Moore Collins BPR# 026099
Ashley S. Walter BPR #037651
Collins & Hunter PLLC
7000 Executive Center Drive, Suite 320
Brentwood, TN 37027
615-724-1996
615-691-7019 FAX
anne@collinshunter.com
ashley@collinshunter.com

*Attorneys for Plaintiff*

15